REST
MAY 1 9 2022

Michael L. Rabb (# 13734)
Kristen L. Corn (#64623324)
THE RABB LAW FIRM, PLLC
3950 Valley Commons Drive, Suite 1
Bozeman, MT 59718
Telephone: (406) 404-1747
Facsimile: (406) 551-6847
Email: service@therabblawfirm.com

*Attorneys for Plaintiffs*

## MONTANA'S EIGHTEENTH JUDICIAL DISTRICT, GALLATIN COUNTY

| | |
|---|---|
| JULIA HALL and JAMES HALL, a married couple;<br><br>Plaintiffs,<br><br>vs.<br><br>RESTORE MONTANA, LLC a Montana Domestic Limited Liability Company; RESTORE FRANCHISING, LLC, a Texas Limited Liability Company; TOD PIERSON WORK, an individual; ABC CORPORATIONS 1-10; and DOES 1-10;<br><br>Defendants. | CASE NO.: DV-22-387A<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES** |

Plaintiffs, Julia Hall and James Hall, by and through their undersigned counsel, pursuant to Montana Rule of Civil Procedure 15(a)(1), and for their causes of action against Defendants Restore Montana, LLC ("Restore MT"), Restore Franchising, LLC ("Restore Franchising"), Tod Pierson Work ("Work"), ABC Corporations 1-10 and Does 1-10 (collectively referred to as "Defendants"), hereby amend their complaint and allege as follows:

### PARTIES

1. Plaintiff Julia Hall is a resident of Gallatin County, Montana.
2. Plaintiff James Hall is a resident of Gallatin County, Montana.
3. At all times alleged herein, Plaintiff James Hall was, and is, married to Julia Hall.

4. At all times alleged herein, Defendant Restore MT was doing business in Montana with its principal place of business in Gallatin County, Montana.

5. Defendant Restore MT is not a licensed Health Care Facility under Title 50, chapter 5 of the Montana Code.

6. At all times alleged herein, Defendant Restore Franchising availed itself of the privileges of doing business in Montana by, among other things, entering into a franchise agreement with Defendant Restore MT and deriving profit from Defendant Restore MT's business operations in Gallatin County, Montana.

7. At all times alleged herein, Defendant Work personally availed himself of the privileges of doing business in Montana by, among other things, participating in Defendant Restore MT's business operations in Gallatin County, Montana, and by deriving profit from Restore MT's business operations in Gallatin, County Montana.

8. Defendant Work is not a "Physician" as defined in Montana Code §27-6-103(7).

9. At the time this Complaint was filed, Plaintiffs were ignorant of the true names and capacities of Does 1-10 and ABC Corporations 1-10, and therefore they sue these Defendants by such fictitious names. Plaintiffs are informed and believe, and thereon allege, that each of these fictitiously named Defendants are liable or responsible in some manner to Plaintiffs for the damages alleged. Plaintiffs will amend this Complaint to allege Does 1-10's and ABC Corporations 1-10's true names and capacities when the same are ascertained.

10. Plaintiffs are informed and believe, and on that basis allege, that at all times herein each of the Defendants, including those sued as ABC Corporations 1-10 and Does 1-10, were acting as the agent, servant, partner, joint venturer, and/or employee of their co-Defendants, and were acting within the scope of that authority with the full knowledge, permission, and express or implied consent of each of the remaining Defendants.

## JURISDICTION & VENUE

11. Plaintiffs re-allege, and incorporate by this reference, each and every allegation in the preceding paragraphs.

12. Montana has jurisdiction over the Defendants, and each of them.

2

**FIRST AMENDED COMPLAINT FOR DAMAGES**

13. Torts alleged in this complaint occurred in Gallatin County, Montana.

14. Venue is proper in Gallatin County, Montana pursuant to Montana Code Annotated ("MCA") §§25-2-122 (2)(a),(2)(b) and (3)(b).

15. This Court has jurisdiction over both the parties and the subject matter of this lawsuit.

## GENERAL ALLEGATIONS

16. Plaintiffs re-allege, and incorporate by this reference, each and every allegation in the preceding paragraphs.

17. At all times relevant hereto, the following individuals were working at Defendant Restore MT's facility at 1040 South Fowler Ave. #205 in Bozeman ("Bozeman Facility"):

   a. Lynne Ryan;
   b. Skyler Hochstein;
   c. McKenzie Schmitt;
   d. Brooke Ekstrom; and
   e. Krista Callantine.

18. Skyler Hochstein was issued a Registered Nurse License on July 16, 2020 (Licenses Number: NUR-RN-LIC-160321).

19. On March 9, 2021, prior to opening its Bozeman Facility, Defendant Restore MT advertised Skyler Hochstein as its "lead nurse" at the Bozeman Facility.

20. At all times relevant hereto, McKenzie Schmitt worked as a "Mobility Specialist" at the Bozeman Facility, did not hold any professional licensing, and was a student at Montana State University.

21. On March 11, 2021, prior to opening its Bozeman Facility, Defendant Restore MT also advertised, among other things, that its cryotherapy service:

   a. Helps reduce inflammation; and
   b. Releases endorphins that help alleviate pain and increase the body's natural healing abilities.

22. On or about April 9, 2021, Defendant Restore MT began offering cryotherapy, among other services, to the public.

3
**FIRST AMENDED COMPLAINT FOR DAMAGES**

23. On or about April 28, 2021, Plaintiff Julia visited Defendant Restore MT's Bozeman Facility for "IV therapy".

24. During the April 28, 2021, visit Plaintiff Julia had a consultation with Defendant Work regarding the "IV therapy" only, and received the "IV therapy".

25. On May 4, 2021, Plaintiff visited Defendant Restore MT's Bozeman Facility for an intramuscular injection and a full-body cryotherapy session.

26. Defendant Restore MT never had a licensed medical professional conduct a pre-cryotherapy consultation with Plaintiff Julia prior to the May 4, 2021 cryotherapy session.

27. After Plaintiff Julia received the intramuscular injection, McKenzie Schmitt escorted Plaintiff Julia to a dressing room to prepare for her cryotherapy session.

28. After Plaintiff Julia was placed in the dressing room, Plaintiff Julia put on the robe, protective headwear and handwear that were provided by Defendant Restore MT.

29. Plaintiff Julia exited the dressing room and McKenzie Schmitt then knelt to Plaintiff Julia's calf and took Plaintiff Julia's temperature on her calf.

30. Prior to placing Plaintiff Julia in the cryotherapy chamber McKenzie Schmitt never advised Plaintiff Julia that she was missing the Defendant Restore MT's necessary protective footwear.

31. McKenzie Schmitt then informed Plaintiff Julia that when she entered the cryotherapy chamber a clock would be on the wall and music would be playing.

32. McKenzie Schmitt advised Plaintiff Julia that she would be able to exit the cryotherapy chamber when the music stopped.

33. McKenzie Schmitt never advised Plaintiff Julia how to stop the cryotherapy session in the event of an emergency.

34. McKenzie Schmitt also never performed a safety check prior to placing Plaintiff Julia in the cryotherapy chamber.

35. Plaintiff Julia was then placed into the cryotherapy chamber and McKenzie Schmitt closed the door.

36. Plaintiff Julia was engulfed in a thick white haze that blinded her to the surroundings, including the interior walls of the chamber, the window, and the clock.

37. The interior of the cryotherapy chamber began cooling from the floor and music began to play.

38. Plaintiffs are informed and believe and thereon allege that the cryotherapy chamber temperatures can reach as low as negative two-hundred- and sixty-six-degrees Fahrenheit.

39. When the floor began cooling, Plaintiff Julia immediately began feeling a burning sensation on the bottom of both feet.

40. To minimize the contact between her feet and the subzero floor of the cryotherapy chamber, Plaintiff Julia started transitioning between her tiptoes and the flat of her foot, which she continued for the duration of the session.

41. Plaintiff Julia had been in the cryotherapy chamber for approximately two minutes and forty-five seconds when the music stopped, and the door opened.

42. Upon exiting the chamber, Plaintiff Julia immediately informed McKenzie Schmitt that something was seriously wrong with the bottom of her feet.

43. For the first time, McKenzie Schmitt noticed that Plaintiff Julia was not wearing Defendant Restore MT's necessary protective footwear.

44. McKenzie Schmitt did not question Plaintiff Julia further about the complaints she was experiencing in her feet, nor did she request any medical attention be provided to Julia.

45. McKenzie Schmitt escorted Plaintiff Julia back to the dressing room, where she left her unattended.

46. Plaintiff Julia immediately contacted her husband Jim letting him know she needed him to come to Defendant Restore MT's Bozeman Facility as soon as possible.

47. Plaintiff Julia remained alone in the dressing room for the next 20 minutes without any member of Defendant Restore MT's staff inquiring as to her well-being.

48. It was only after Jim arrived at the Bozeman Facility that Julia was removed from the dressing room and brought to the front of the facility where Jim was waiting for her.

49. While at the front desk, Plaintiff Julia was finally asked if she wanted to see the on-site nurse, Skyler Hochstein.

50. Plaintiff Julia was taken back to see Skyler Hochstein, who looked at Plaintiff Julia's feet

5

**FIRST AMENDED COMPLAINT FOR DAMAGES**

and advised her to simply go home and "keep an eye on it."

51. Plaintiff followed the advice provided by Skyler Hochstein and went home for the night.

52. Defendant Work never saw or spoke with Plaintiff Julia after her cryotherapy chamber session.

53. Plaintiff Julia presented to the Bozeman Deaconess Emergency Department the following day and was diagnosed with severe frostbite to the bottom of both feet.

54. While Plaintiff Julia was in the Emergency Department at Bozeman Deaconess on May 5, 2021, Defendant Restore MT was celebrating its "Grand Opening" for the Bozeman Facility.

55. Defendant Restore MT's May 4, 2021 "Patient Chart" notes for Plaintiff Julia do not reference the cryotherapy treatment session for that date.

56. Defendant Restore MT invited Plaintiff Julia to return to the Bozeman Facility on May 6, 2021, claiming it wanted to help her.

57. On May 6, 2021, Plaintiff Julia returned to the Bozeman Facility.

58. On May 6, 2021, for the first time, notes concerning the cryotherapy session were recorded in Defendant Restore MT's "Patient Chart" for Plaintiff Julia.

59. The May 6, 2021 notes contained self-serving statements that served no other purpose.

60. The May 6, 2021 notes were purportedly authored by Defendant Work who never spoke with or saw Plaintiff Julia following the May 4, 2021 cryotherapy chamber session.

## CAUSE OF ACTION I: NEGLIGENCE / GROSS NEGLIGENCE
(Plaintiff Julia Against All Defendants)

61. Plaintiffs re-allege, and incorporate by this reference, each and every allegation in the preceding paragraphs.

62. Defendants owed a duty to Plaintiff Julia to use reasonable care under the circumstances.

63. The standard of care required to be exercised by Defendant Restore Franchising when providing the means and mechanisms for Defendant Restore MT to safely offer cryotherapy to clients, includes, among other things:

   a. Providing the proper placement of, and/or resources to ensure Defendant Restore MT's hiring of, qualified individuals;

---
6
**FIRST AMENDED COMPLAINT FOR DAMAGES**

    b. Providing proper and adequate training on the administration of cryotherapy services;

    c. Providing proper and adequate training on how to respond to injuries sustained during cryotherapy services;

    d. Providing proper and adequate training on safety protocols related to cryotherapy services;

    e. Providing proper and adequate training on how to identify and hire qualified individuals to administer cryotherapy services and first aid; and

    f. Providing appropriate oversite to allow Defendant Restore MT to safely and properly administer cryotherapy services to its clients; and

    g. Establishing appropriate protocols and procedures for its franchisees to follow in response to reported injuries caused by cryotherapy.

64. Defendant Restore Franchising failed to adhere to the foregoing standards of care, thereby breaching its duty owed to Plaintiff Julia when it, among other things:

    a. Failed to provide the proper placement of, and/or resources to ensure Defendant Restore MT hired, qualified individuals;

    b. Failed to provide proper and adequate training to Defendant Restore MT on how to administer cryotherapy services;

    c. Failed to provide proper and adequate training to Defendant Restore MT on how to respond to injuries sustained during cryotherapy services;

    d. Failed to provide proper and adequate training to Defendant Restore MT on safety protocols related to cryotherapy services; and

    e. Failed to provide proper and adequate training on how to identify and hire qualified individuals to administer cryotherapy services and first aid; and

    f. Failed to provide appropriate oversite to allow Defendant Restore MT to safely and properly administer cryotherapy services to its clients; and

    g. Failed to establish appropriate protocols and procedures for its franchisees to follow in response to reported injuries caused by cryotherapy.

65. The standard of care required to be exercised by Defendant Restore MT, when placing its

7

**FIRST AMENDED COMPLAINT FOR DAMAGES**

clients into an enclosed chamber that reaches temperatures as low as -260 degrees Fahrenheit, includes, among other things, to:

   a. Ensure that necessary protective coverings are provided to its clients, including Plaintiff Julia, prior to placing them in the chamber;
   b. Ensure that its clients, including Plaintiff Julia, are wearing the necessary protective coverings before placing them in the chamber;
   c. Provide its clients, including Plaintiff Julia, with information on dangerous physical sensations that, if they were to occur at any time during the cryotherapy treatment, would signal the onset of an injury;
   d. Provide its clients, including Plaintiff Julia, with instructions on how to stop the cryotherapy session in the event of injury or an emergency;
   e. Provide its clients, including Plaintiff Julia, with instructions on how to exit the chamber in the event of injury or an emergency;
   f. Provide its clients, including Plaintiff Julia, with appropriate and timely first aid if injury is sustained as a result of the cryotherapy session; and
   g. Establish protocols and procedures for its staff to follow in response to reported injuries caused by cryotherapy.

66. Defendant Restore MT failed to adhere to the foregoing standards of care, thereby breaching its duty owed to Plaintiff Julia when it, among other things:

   a. Failed to provide Plaintiff Julia with the necessary protective foot coverings prior to entering the chamber;
   b. Failed to ensure that Plaintiff Julia was wearing the necessary protective foot coverings before placing her in the chamber;
   c. Failed to provide Plaintiff Julia with information on dangerous physical sensations that, if they were to occur at any time during the cryotherapy treatment, would signal the onset of an injury;
   d. Failed to provide Plaintiff Julia with instructions on how to stop the cryotherapy session in the event of injury or an emergency;

8

FIRST AMENDED COMPLAINT FOR DAMAGES

  e. Failed to provide Plaintiff Julia with instructions on how to exit the chamber in the event of injury or an emergency;

  f. Failed to provide plaintiff Julia with appropriate and timely first aid in response to injuries suffered as a result of the cryotherapy session; and

  g. Failed to establish, or follow, protocols and procedures in response to a reported injury caused by cryotherapy.

67. Defendant Restore MT's conduct constituted gross negligence when, among other things, McKenzie Schmitt, while taking Plaintiff Julia's temperature on her lower calf, failed to recognize that Plaintiff Julia was not wearing the required protective footwear before she placed her in the chamber.

68. Defendant Retore MT had knowledge of facts and intentionally disregarded those facts thereby creating a high probability of injury to Plaintiff Julia when it, among other things:

  a. Failed to respond to Plaintiff Julia's report of injuries upon her exit from the chamber;

  b. Failed to provide first aid addressing Plaintiff Julia's injuries;

  c. Failed to instruct Plaintiff Julia to obtain medical attention for her injuries; and

  d. Instructed Plaintiff Julia only to "go home and keep an eye on it."

69. Defendant Restore MT recognized that its conduct was so egregious that it took malicious actions to minimize the appearance of its culpability by, among other things, inviting Plaintiff Julia back to the Bozeman Facility under the guise of wanting to help her, but with the intention of using the opportunity to create false and self-serving entries in records that served no purpose related to the service provided at that time.

70. The standard of care required to be exercised by Defendant Work to clients of Restore MT contemplating or proceeding with cryotherapy services, including Plaintiff Julia, includes, among other things, that he:

  a. Discuss with clients, including Plaintiff Julia, the potential risks of cryotherapy treatment prior to the client undergoing the treatment;

  b. Discuss with clients, including Julia Hall, the importance of wearing the required protective head, hands, and footwear in order to avoid serious injury from the cryotherapy;

9

**FIRST AMENDED COMPLAINT FOR DAMAGES**

  c. Inform and alert clients, including Plaintiff Julia, as to any physical changes or sensations that, if they were to occur at any time during or after the cryotherapy session, would signal the onset of an injury;

  d. Inform clients, including Plaintiff Julia, as to how to exit the chamber in the event of an emergency or injury; and

  e. Timely communicate with Restore MT staff, as well as follow up with the client, including Plaintiff Julia, after learning of an injury sustained by the client as a result of the cryotherapy session.

71. Defendant Work failed to adhere to the foregoing standards of care, thereby breaching his duty owed to Plaintiff Julia when he, among other things:

  a. Failed to consult with Plaintiff Julia prior to the May 4th cryotherapy session, regarding the cryotherapy appointment as to what to expect and any potential risks associated with cryotherapy, such as frostbite.

  b. Failed to discuss with Plaintiff Julia the importance of wearing the required protective head, hands, and footwear in order to avoid serious injury from cryotherapy;

  c. Failed to alert or inform Plaintiff Julia as to physical sensations or changes that, if they were to occur at any time during or after the cryotherapy session, would signal the onset of an injury;

  d. Failed to instruct or inform Plaintiff Julia as to how to exit the cryotherapy chamber in the event of an emergency or injury: and

  e. Failed to timely communicate with Restore MT staff and/or Plaintiff Julia after learning of the injuries she sustained during and as a result of the cryotherapy session on May 4, 2021.

72. As a direct and proximate result of the Defendants' conduct Plaintiff Julia has suffered injuries and damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth in the Prayer for Relief below.

## CAUSE OF ACTION II: LOSS OF CONSORTIUM
(James Hall Against All Defendants)

73. Plaintiffs re-allege, and incorporate by this reference, each and every allegation in the preceding paragraphs.

74. On May 4, 2021, Plaintiffs were validly and lawfully married.

75. Plaintiff Julia suffered personal injuries that were proximately caused by Defendants' conduct.

76. As a result of Plaintiff Julia's injuries, Plaintiff James has suffered a loss of consortium that was proximately cause by Defendants' conduct.

WHEREFORE, Plaintiff James prays for judgment against Defendants, and each of them, as set forth in the Prayer for Relief below.

## PRAYER

WHEREFORE, Plaintiffs pray for relief as follows:

1. For judgment against all Defendants and in favor of Plaintiffs;
2. For an award of damages to Plaintiffs in an amount to be proven at trial;
3. For general and special damages in Plaintiff Julia's favor and in a sum to be determined at trial;
4. For punitive damages as permitted under each cause of action;
5. For loss of consortium damages in Plaintiff James' favor and in a sum to be determined at trial;
6. For reasonable attorneys' fees as permitted by law;
7. For pre-judgment and post-judgment interest, as well as expert witness fees and other costs; and
8. For such other relief as this Court deems just and appropriate.

Dated: April 27, 2022

_____
MICHAEL L. RABB
*Attorney for Plaintiffs*

Judge Peter B. Ohman
Department 1

REST
MAY 19 2022

# MONTANA'S EIGHTEENTH JUDICIAL DISTRICT, GALLATIN COUNTY

| | |
|---|---|
| JULIA HALL and JAMES HALL, a married couple;<br><br>Plaintiffs,<br><br>vs.<br><br>RESTORE HYPER WELLNESS MT, PLLC, a Montana Domestic Limited Liability Company; RESTORE FRANCHISING, LLC, a Texas Limited Liability Company; TOD PIERSON WORK, an individual; ABC CORPORATIONS 1-5; and DOES 1-5;<br><br>Defendants. | CASE NO.: DV-22-387A<br><br>SUMMONS — RESTORE FRANCHISING, LLC |

## THE STATE OF MONTANA TO THE ABOVE-NAMED DEFENDANT:

## RESTORE FRANCHISING, LLC

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action which is filed in the office of the above-named Court, a copy of which is herewith served upon you, and to file your answer and serve a copy thereof upon Plaintiff's attorney within 21 days after service of this Summons, exclusive of the day of service; and in case of your failure to appear or answer, judgment will be taken against you by default, for the relief demanded in the Complaint.

GIVEN under my hand this 15th day of April 2022.

SANDY ERHARDT
CLERK OF DISTRICT COURT
By: _____, Deputy Clerk